**Bobby L. JONES**

v.

**The UNITED STATES.**

**No. 325–82C.**

United States Claims Court.

April 4, 1985.

675

William H. Dazey, Jr., Indianapolis, Ind., for plaintiff.

William J. Snider, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

SETO, Judge.

In this military pay case, plaintiff seeks back pay and placement in retirement status following his involuntary discharge from the U.S. Army. The underlying issues are (1) whether this court has jurisdiction to hear plaintiff's claim, and (2) whether the decision of the Secretary of the Army to disapprove the recommendations of the Army Board for the Correction of Military Records and discharge plaintiff was arbitrary, capricious or an abuse of discretion. For the reasons stated below, defendant's cross-motion for summary judgment is granted.

## FACTS

Plaintiff, Sergeant Bobby Jones, initially enlisted in the Army on January 7, 1949, and served continuously until December 6, 1968, when he was convicted of second degree murder in an Indiana state court and sentenced to life imprisonment. At the time of his conviction, plaintiff had completed 19 years, 6 months and 20 days of creditable service under 10 U.S.C. § 3914 (1976), with his most recent reenlistment due to expire in June 1970.

On May 24, 1973, a Board of Officers was convened to determine whether plaintiff should be discharged from the Army as a result of his civil conviction. The board recommended that plaintiff be retained in the military in a non-pay status and, upon his release from civil confinement, be returned to military service.[1] Thereafter, the convening authority forwarded the board proceedings to the Commander of the Army Military Personnel Center with the recommendation that plaintiff be separated from the service. On February 11, 1974, the Deputy Commander disapproved the request for separation and upheld the board's recommendations.

In a memorandum to the Assistant Secretary of the Army dated April 12, 1978, the Office of the Deputy Chief of Staff for Personnel recommended that plaintiff be discharged from the Army under Secretarial authority and furnished a general discharge certificate. Pursuant to the approval of the Secretary of the Army, and without prior notice to plaintiff, the Army discharged plaintiff under honorable conditions on June 29, 1978. Although plaintiff's discharge form initially reflected that he was released under Army Regulation (AR) 635–200, Chapter 14 (Misconduct), his records were corrected on January 21, 1983, to reflect that he was discharged for the convenience of the government under AR 635–200, Chapter 5.

On April 16, 1980, the Governor of Indiana commuted plaintiff's sentence to time served and he was released from custody. In October 1980, plaintiff petitioned the Army Board for the Correction of Military Records (hereinafter referred to as "ABCMR" or "Board") to void his discharge and return him to active duty so that he may qualify for retirement pay. Pursuant to requests for legal guidance by the ABCMR, the Office of the Deputy Chief of Staff for Personnel and the Judge Advocate General indicated that plaintiff was properly discharged for the convenience of the government in accordance with applicable regulations.

After a hearing on October 21, 1981, the ABCMR decided by a vote of three to two (3–2) that, although it was legally and administratively correct, plaintiff's discharge should be voided as a matter of equity and plaintiff awarded sufficient constructive service to qualify him for retirement. On March 8, 1982, the Deputy Assistant Secretary of the Army disapproved the Board's recommendations and denied plaintiff's request for correction of his records. Plaintiff filed the instant action on July 6, 1982, seeking back pay, correction of his military records and placement in retirement status. The case presently is before the court on cross-motions for summary judgment.

---

1. 10 U.S.C. § 972 (1976) provides that an enlisted man who is confined for more than one day under a final sentence is *liable,* upon his return to full duty, to serve for a period which will satisfy his enlistment commitment.

## DISCUSSION

### I. *Jurisdiction*

In challenging this court's jurisdiction, defendant argues that plaintiff fails to establish entitlement to a money judgment. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Austin v. United States*, 206 Ct.Cl. 719 (1975), *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). In particular, defendant alleges that neither plaintiff's claim for back pay related to his 1967 enlistment nor his claim for retirement pay is supported by statute or regulation. Plaintiff rejoins that because he was retained in the military by the Board of Officers convened on May 24, 1973, he would have completed his term of enlistment upon his release from incarceration had he not been discharged in 1978. Therefore, plaintiff contends that but for his allegedly improper discharge, he would have earned active duty pay and qualified for placement in retirement status.

With respect to plaintiff's back pay claim, defendant argues that plaintiff has been paid for all good time that he served through the end of his last term of enlistment. Defendant properly notes that an enlisted member's entitlement to pay terminates with the expiration of his current term of enlistment, *see Keef v. United States*, 185 Ct.Cl. 454, 461–466 (1968), that he has no right to re-enlist, *see Austin*, 206 Ct.Cl. at 723–724, and that in the instant action, plaintiff was not entitled to pay during his civilian confinement, *see Stone v. United States*, 219 Ct.Cl. 604, 605–606, 618 F.2d 119 (1979); 37 U.S.C. § 503(a) (1976) and implementing regulations. Defendant contends that because plaintiff's term of enlistment expired while he was in civilian confinement and he was paid for all time served prior to his incarceration, plaintiff cannot establish an entitlement to back pay.

Moreover, defendant alleges that plaintiff's retention in the service under 10 U.S.C. § 972 was insufficient, by itself, to support a claim for active duty pay. Defendant interprets § 972 as providing the service secretary the *option* of requiring an enlisted member to serve the full period of his enlistment, but not as mandating such service. Because plaintiff was discharged before he was released from confinement, defendant contends that plaintiff had no right to serve the remainder of his enlistment as his inchoate obligation under § 972 was never realized. Additionally, defendant argues that plaintiff's discharge, even if adjudged to be improper, is an indication that the Secretary had no intention of exercising his option under § 972.

Similarly, defendant argues that plaintiff has shown no entitlement to retirement pay. To qualify for retirement, an enlisted person must serve at least 20 years as computed under 10 U.S.C. § 3925 (1976). *See* 10 U.S.C. § 3914 (1976). However, 10 U.S.C. § 3925(b) indicates that time required to be served under 10 U.S.C. § 972 may not be counted in determining years of service for retirement. Therefore, defendant contends that even if plaintiff could establish that his discharge was improper and that he would have been permitted to serve as a result of his retention under § 972, he would not be entitled to retirement pay as his 19 years of service prior to his incarceration does not meet the requirements of 10 U.S.C. § 3914.

Despite its initial appeal, however, defendant's argument ignores the favorable decision of the ABCMR and the Secretary's disapproval of it and consequent discharge of plaintiff. In essence, defendant argues that this court is without jurisdiction to review a decision by a Board for the Correction of Military Records and the service secretary's action on its recommendations. This argument is without merit.

■ It is well-established that this court has jurisdiction to review the actions of military correction boards and service secretaries, *see Armstrong v. United States*, 205 Ct.Cl. 754, 760–761 (1974); *Hertzog v. United States*, 167 Ct.Cl. 377, 383–385 (1964), especially where such actions have monetary consequences, *see Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d

804 (1979). In *Hertzog,* the Court of Claims noted that the correction board legislation, 10 U.S.C. § 1552, should be read together with the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. (1976), to determine the full extent of the legislative scheme envisioned by Congress. 167 Ct.Cl. at 383–384. The court concluded that "not only did Congress provide the avenue for corrective measures, but also provided for judicial review in the event of arbitrary or unlawful action by the Board or Secretary concerned." 167 Ct.Cl. at 384; *see also Sanders,* 219 Ct.Cl. at 296–302, 594 F.2d 804. Similarly, in *Friedman v. United States,* 141 Ct.Cl. 239, 151 F.Supp. 364 (1958), the court found that "Congress had no intention, in enacting the correction board legislation, of withholding from this court jurisdiction to render a money judgment for pay of which a claimant is deprived by reason of the arbitrary or illegal action of a correction board [or Secretary] in ... wrongfully refusing to correct the record...." *Id.* 259, 151 F.Supp. 364.

■ In *Eicks v. United States,* 145 Ct.Cl. 522, 172 F.Supp. 455 (1959), plaintiff challenged the Secretary of the Navy's disapproval of the correction board's favorable recommendation. In addressing its jurisdiction, the court stated:

> It is within the jurisdiction of this court to correct the action of the Board if it results from the Secretary's arbitrary disapproval of the Board's decision and recommendation.... This action seeks the recovery of [back pay] and the right to recover depends on whether the refusal to correct the record was arbitrary. [145 Ct.Cl. at 527, 172 F.Supp. 455 (citations omitted).]

That declaration by the *Eicks* court is equally applicable in the instant action. Acting under its statutory directive to correct a member's military record when necessary to "remove an injustice," 10 U.S.C. § 1552(a), and despite finding plaintiff's discharge to be proper, the ABCMR recommended that plaintiff be deemed retirement eligible. Because action under 10 U.S.C. § 1552 is interpreted as being final, *see*

*Friedman,* 141 Ct.Cl. at 257–259, 151 F.Supp. 364; *Sanders,* 219 Ct.Cl. at 299–300, 594 F.2d 804, plaintiff's right to recover retirement pay depends on whether the Secretary's refusal to adopt the Board's recommendations was proper. It is clear that "[t]his court has jurisdiction over those cases ... that not only contest the failure of a military correction board [or Secretary] to correct an alleged legal or factual error but also the failure ... to remove a prejudicial injustice...." *Sanders,* 219 Ct.Cl. at 297, 594 F.2d 804. Accordingly, we shall invoke our jurisdiction to determine whether the Board's recommendations should have been approved by the Secretary.

## II. *Scope of Review*

Plaintiff argues that the Secretary was not free to reject the Board's recommendations because the Board's decision that an injustice had occurred stems from the Secretary's actions. In particular, plaintiff alleges that a finding by the Secretary that his own previous actions were proper is inconsistent with the Congressional intent in creating Correction Boards. Under the precedent established by the U.S. Court of Claims, this argument is without merit.

■ Although a service secretary, acting through boards of civilians, may correct a military record when he considers it necessary to correct an error or remove an injustice, 10 U.S.C. § 1552, it is clear that the Secretary's decision is a discretionary one. *See Boyd v. United States,* 207 Ct.Cl. 1, 7 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). Army Regulation 15–185 (1977), implements 10 U.S.C. § 1552 and states, in pertinent part:

> 20. Action by Secretary of the Army. The record of proceedings of the Board ... will be forwarded to the Secretary of the Army who will direct such action in each case as he/she determines to be appropriate.

Thus, the Secretary has "retained the authority to take such final action on board recommendations as he determines to be appropriate." *Boyd,* 207 Ct.Cl. at 8.

In determining whether a Secretary has improperly failed to correct an alleged error or injustice, however, this court must employ a narrow scope of review. Thus, the decision of a service secretary is deemed to be final unless it can be shown by clear and convincing evidence to be arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation. *Sanders,* 219 Ct.Cl. at 298, 301–302, 594 F.2d 804; *Boyd,* 207 Ct.Cl. at 8–9; *Armstrong,* 205 Ct.Cl. at 761; *Eicks,* 145 Ct.Cl. at 526, 172 F.Supp. 455. This burden is substantial, especially in light of the court's deference to the military in the conduct of their internal affairs. *Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804; *Boyd,* 207 Ct.Cl. at 9. Therefore, while we may disagree with the Secretary on whether a specific situation works an injustice, we will not substitute our judgment for his when reasonable minds could reach differing conclusions. *See Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804. Should the challenging party carry its burden, however, "the abuse of administrative discretion rises to the level of legal error which merits judicial relief." *Id.*

In cases where the Secretary denies relief to the petitioner and does not expressly adopt the findings, conclusions and recommendations of the Board, he must include in his written decision a brief statement of the grounds for denial. AR 15–185, ¶ 20 (1977). Although the Secretary failed to delineate the basis for his denial of relief in the instant case, his action will be upheld under the enunciated standard of review if it is supported by the record and evidence presented to the Board. *See Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir.1974), *cited with approval in Sanders,* 219 Ct.Cl. at 299, 594 F.2d 804; *Hertzog,* 167 Ct.Cl. at 384–385. It is within this framework, therefore, that we examine the Secretary's actions.

## III. *Merits of the Action*

Plaintiff alleges that the Secretary's disapproval of the ABCMR's recommendation was arbitrary, capricious and an abuse of discretion. In particular, plaintiff contends that the Secretary unjustifiably failed to correct an alleged injustice and that his discharge was contrary to applicable laws and Army regulations, and violated the procedural due process requirements of the Fifth Amendment to the U.S. Constitution. Because the ABCMR found that plaintiff's discharge was administratively correct, plaintiff is challenging the Board's decision as well on this issue.

### A. *Secretary's Disapproval of the Board's Recommendation*

The Secretary's decision to overrule the Board's recommendations and discharge plaintiff without granting him retirement status is supported by substantial evidence of record and therefore will not be overturned. While the Secretary agrees with the Board's assessment of the facts of the instant case, including the propriety of plaintiff's discharge, he disagrees with the Board's determination that plaintiff is entitled to equitable relief. In doing so, the Secretary joins the two dissenting Board members who found insufficient evidence to warrant an award of equitable relief, especially in light of the gravity of plaintiff's offense. This is clearly the type of decision where reasonable minds could reach differing conclusions based on the same record. *See Sanders,* 219 Ct.Cl. at 302, 594 F.2d 804. Given the circumstances of the instant case, and in view of the broad discretion accorded the military in the administration of personnel matters, *id.,* the Secretary's disapproval of the Board's recommendation to grant plaintiff equitable relief was entirely proper. Because the Secretary's decision is supported by the record and evidence presented to the Board, we find his failure to document the reasons underlying his decision to be harmless error. *See Hodges,* 499 F.2d at 423.

### B. *Propriety of Plaintiff's Discharge*

Additionally, plaintiff argues that the Secretary's decision to disapprove the Board's recommendations was an abuse of

discretion in that plaintiff's 1978 discharge was improper. This argument, however, is unavailing as it ignores the fact that plaintiff's alleged right to retirement pay derives solely from the recommendation of the ABCMR. Even if plaintiff had not been discharged in 1978 and had returned to active duty under 10 U.S.C. § 972 to serve out the remaining term of his enlistment, he would not have become eligible for retirement. 10 U.S.C. § 3925(b) specifically provides that time required to be served under § 972 may *not* be counted in determining years of service for retirement. Therefore, even if plaintiff could establish that his discharge was improper, he would not acquire retirement status on the basis of his ensuing service.

Assuming, arguendo, that the propriety of plaintiff's 1978 discharge would affect his entitlement to the relief requested, plaintiff fails to establish that his discharge was contrary to applicable laws or regulations, or the Constitution.

### 1. *Statutory and Regulatory Requirements*

 Pursuant to 10 U.S.C. § 1169, the Secretary of the Army promulgated AR 635–200 to govern the discharge of enlisted personnel prior to the end of their term. In Chapter 5, the Secretary retained plenary authority to separate an enlisted member for the convenience of the government. Although plaintiff's discharge form initially indicated that he was released under Chapter 14 for civil conviction, his records were later corrected to reflect that Chapter 5 provided the basis for his 1978 discharge. Because it is supported by the record, we find nothing improper in that correction. *See Rumph v. United States*, 228 Ct.Cl. 855, 858 (1981). Plaintiff alleges, however, that the provisions of Chapters 1 and 14 limit the Secretary's authority under Chapter 5 and therefore nullify the Secretary's actions. We remain unconvinced that plaintiff's discharge was contrary to the mandate of AR 635–200.

Plaintiff argues that Chapter 1, ¶ 1–19, precluded the Secretary from exercising his authority under Chapter 5 because plaintiff's discharge was based on conduct which had been considered by a Board of Officers that recommended his retention in the service. The language of ¶ 1–19, however, does not support plaintiff's claims:

1–19. Restrictions on administrative discharge and board hearings.

* * * * * *

b. Discharge pursuant to this regulation should not be based on conduct which has already been considered at a prior administrative or judicial proceeding and disposed of in a manner indicating that discharge is not warranted. Accordingly, administrative discharges under the provisions of Chapters 13 and 14 of this regulation and AR 604–10 are subject to the following restrictions....

By its terms, ¶ 1–19 restricts administrative discharges pursuant to *board action* under those Chapters of the regulation which provide for separation as a result of certain proscribed conduct. Indeed, ¶ 1–19(b) speaks specifically to discharges under Chapter 13 (unsuitability) and Chapter 14 (misconduct), but makes no reference to Chapter 5 discharges.

 Moreover, the separate chapters of AR 635–200 present *alternative* procedures that the Army may use to separate an enlisted member. *See Keef v. United States*, 185 Ct.Cl. 454, 464 (1968). As a result, their procedural and substantive requirements are not interrelated. It would be contrary to the language and intent of Chapter 5 to unduly limit the Secretary's ability to effect a discharge for the convenience of the government. Accordingly, we find that ¶ 1–19 does not limit Secretarial action under Chapter 5.

 Plaintiff also argues that his discharge was procedurally defective because he was denied prior notice and an opportunity to be heard. In support of this claim, plaintiff alleges that Chapter 1, ¶ 1–25, delineates the standards and procedural safeguards for discharge under Chapter 5. Paragraph 1–25, however, relates only to convening authority action after board

hearings, not to *independent* Secretarial action under Chapter 5. Because plaintiff's 1978 discharge was not effected pursuant to Chapter 14, and thus did not reach the Secretary following convening authority action, § 1–25 has no bearing on the Secretary's actions in discharging plaintiff for the convenience of the government.

 In a case similar to the instant action, the Court of Claims concluded that a discharge prior to the expiration of an enlistment term need *not* be preceded by notice and a hearing:

> We find, therefore, that an honorable discharge for the convenience of the government ... prior to the expiration of an enlistment, without more, is within legally proper bounds when effected without notice or a hearing. [*Keef,* 185 Ct.Cl. at 468.]

Accordingly, we find that plaintiff was not entitled to notice or a hearing prior to his discharge. Therefore, plaintiff's 1978 discharge under Chapter 5 complied with all applicable statutory and regulatory requirements.

2. *Constitutional Due Process*

Plaintiff contends that the Secretary's failure to provide him notice and a hearing prior to his discharge also violated his constitutional right to due process. "As a general rule, if the regulation pursuant to which a serviceman is honorably discharged does not, by its own terms, require notice and a hearing, they are required only if the discharge, albeit honorable, either casts a stigma on the serviceman or has some derogatory connotation." *Keef,* 185 Ct.Cl. at 467. Plaintiff has not shown how his discharge for the convenience of the government under honorable conditions stigmatizes him or permits derogatory connotations. Indeed, the Court of Claims has explicitly stated that such a discharge "does not carry with it any stigma or derogatory connotation to the public at large." *Birt v. United States,* 180 Ct.Cl. 910, 914 (1967). In addition, plaintiff was afforded a hearing, albeit after the fact, before the ABCMR in which the propriety of his discharge was affirmed, despite argument identical to that made before this court. That hearing was sufficient to satisfy any due process rights to which plaintiff may have been entitled. *See Alberico v. United States,* 7 Cl.Ct. 165, 168–169 (1984). Therefore, we find that plaintiff has failed to establish a violation of his constitutional rights.

CONCLUSION

For the reasons stated above, we find that the Secretary's decision to disapprove the recommendation of the ABCMR and discharge plaintiff without retirement benefits was in accordance with all applicable laws and regulations, supported by substantial evidence and was neither arbitrary, capricious nor an abuse of discretion. Accordingly, defendant's cross-motion for summary judgment is GRANTED, plaintiff's motion for summary judgment is DENIED, and the complaint is to be dismissed.